WR-85,771-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/27/2016 2:09:24 PM
Accepted 9/27/2016 2:18:23 PM
ABEL ACOSTA
CLERK

**NO.**

**IN THE COURT OF CRIMINAL APPEALS**

RECEIVED
COURT OF CRIMINAL APPEALS
9/27/2016
ABEL ACOSTA, CLERK

**OF THE STATE OF TEXAS**

**JEREMIE GLEN TENNISON,**

**Relator**

**V.**

**THE HONORABLE EDWIN KLEIN,**

**Respondent**

**From the 420th District Court of Nacogdoches County, Texas**

**RELATOR'S PETITION FOR WRIT OF MANDAMUS**

**Clay Dean Thomas**
**3548 NE Stallings Drive**
**Nacogdoches, Texas 75965**
**Texas State Bar Number 24088520**
**clay.thomas@claythomaspc.com**

## JEREMIE GLEN TENNISON, RELATOR

## V.

## THE HONORABLE EDWIN KLEIN, RESPONDENT

## IDENTITY OF PARTIES AND COUNSEL

**Relator and Real Party in Interest:**          **Respondent:**

Jeremie Glen Tennison          The Honorable Edwin Klein

**Trial Attorney for Relator:**

Clay Dean Thomas
Attorney at Law
3548 NE Stallings Drive
Nacogdoches, Texas 75965

**Attorney for Realtor on Appeal:**

Clay Dean Thomas
Attorney at Law
3548 NE Stallings Drive
Nacogdoches, Texas 75965

**Presiding Judge:**

The Honorable Edwin Klein
420th District Court
101 West Main Street
Suite 220
Nacogdoches, Texas 75961

# CONTENTS

**IDENTITY OF PARTIES AND COUNSEL**................................................................ii

**STATEMENT OF JURISDICTION**......................................................................... 2

**STATEMENT OF THE CASE** ................................................................................ 2

**ISSUES PRESENTED** ............................................................................................. 4

    I.    THE TRIAL COURT'S FAILURE TO AFFORD RELATOR A FAIR AND IMPARTIAL HEARING HAS CONSTITUTIONALLY DEPRIVED HIM OF A RIGHT PROTECTED BY THE CONSTITUTIONS OF BOTH THE UNITED STATES AND THE STATE OF TEXAS ...................................................................................................... 4

    II.    THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO HOLD HEARING ON MOTION TO WITHDRAW WAIVER OF JURY TRIAL.............................. 4

    III.    THE RELATOR'S EARLIER WAIVER WAS THE RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL.................................................................................... 4

    IV.    MANDAMUS IS THE APPROPRIATE REMEDY IN THIS CASE............................ 4

**STATEMENT OF THE FACTS** ............................................................................... 5

**ARGUMENT AND AUTHORITITES** ...................................................................... 9

    I.    THE TRIAL COURT'S FAILURE TO AFFORD RELATOR A FAIR AND IMPARTIAL HEARING HAS CONSTITUTIONALLY DEPRIVED HIM OF A RIGHT PROTECTED BY THE CONSTITUTIONS OF BOTH THE UNITED STATES AND THE STATE OF TEXAS ...................................................................................................... 9

II.     THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO HOLD HEARING ON MOTION TO WITHDRAW WAIVER OF JURY TRIAL ............................ 14

III.    THE RELATOR'S EARLIER WAIVER WAS THE RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL ............................. 17

IV.    MANDAMUS IS THE APPROPRIATE REMEDY IN THIS CASE ........................... 19

**CONCLUSION** ............................. 23

**PRAYER** .............................. 24

**CERTIFICATION** .............................. 24

**CERTIFICATE OF APPELLATE COUNSEL** ................................. 25

**CERTIFICATE OF COMPLIANCE** ................................. 25

**CERTIFICATE OF SERVICE** .............................. 26

**CERTIFICATE OF SERVICE** .............................. 26

Cases

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)........................................................ 14, 17

*Dickens v. Second Court of Appeals*, 727 S.W.2d 542 (Tex. Crim. App. 1987).......................... 21

*Downer v. Aquamarine Operators, Inc*. 701 S.W.2d 238 (Tex. 1985)........................................ 15

*Ford v. State*, 305 S.W.3d 530 (Tex. Crim. App. 2009).................................................. 9

*Green v. State*, No. 14-99-00642-CR (Tex. App. — Houston [14th Dist.] Jan. 4, 2001) ............. 22

*Hobbs v. State*, 298 S.W.3d 193 (Tex. Crim. App. 2009) ................................................ 13

*In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004)........................................ 22

*In re State ex. Rel. Weeks*, 391 S.W.3d 117 (Tex. Crim. App. 2013)........................................ 21

*In re Winship*, 397 U.S. 658 (1970) ...................................................................... 14

*Joachim v. Chambers*, 815 S.W.2d 234 (Tex.1991)........................................................ 1

*Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916 (Tex. 1985) ............................................ 20

*Marquez v. State*, 921 S.W.2d 217 (Tex. Crim. App. 1996).............................................. 12, 22, 23

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990) .................................................. 15

*Penry v. State*. 903 S.W.2d 715 (Tex. Crim. App. 1995) ................................................ 15

*People v. Melton*, 271 P.2d 962 (Cal. App. Dep't Super. Ct. 1954)) .......................................... 12

*Rios v. Calhoon*, 889 S.W.2d 257 (Tex.1994) .......................................................... 1

*State ex. rel. Young v. Sixth Judicial District Court of Appeals*, 236 S.W.3d 207 (Tex. Crim.
    App. 2007) .......................................................................................... 21

*Stoner v. Massey*, 586 S.W.2d 843 (Tex. 1979) ........................................................ 23

*Sullivan v. Louisiana*, 508 U.S. 275 (1993).............................................................. 14

*Terrazas v. Ramirez*, 829 S.W.2d 712 (Tex. 1992) ...................................................... 23

*Trimble v. PR Reg. Ser*., 981 S.W.2d 211 (Tex. App. — Houston [14th Dist.] 1998)................. 15

*United States v. Gaudin*, 515 U.S. 506 (1995)...................................................................... 14

*Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992) .................................................................. 20

Statutes

Tex. Code Crim. Proc. § 28.01 ........................................................................................ 9, 10

Tex. Code Crim. Proc. 11.15 .......................................................................................... 9, 10

Tex. Code Crim. Proc. Ann. Art. 1.12 ................................................................................ 12

Tex. Gov't Code Ann. §§ 22.221 (a), (b) (West 2014)...................................................... 20

Tex. Gov't Code Ann. Tit. 2, subtit. G, app. A (West 2015)............................................. 18

Rules

Tex. Disciplinary Rules Prof'l Conduct R. 1.01, cmt 6. (1989) ....................................... 18

Tex. R. App. P. 52.3(e) ...................................................................................................... 20

Tex. State Bar R. art. X, § 9.............................................................................................. 18

Constitutional Provisions

TEX. CONST. art V, § 3...................................................................................................... 20

TEX. CONST. art V, § 6...................................................................................................... 20

TEX. CONST. art. I, § 15. ................................................................................................... 12

U.S. CONST amend. XIV.................................................................................................... 14

U.S. CONST. amend. VI ................................................................................................ 11, 14

CASE NO.

IN RE JEREMIE GLEN TENNISON,

Relator

_____

**RELATOR'S PETITION FOR WRIT OF MANDAMUS**

_____

Relator, Jeremie Glen Tennison, submits this original petition for writ of mandamus. Relator originally petitioned the Twelfth Court of Appeals in Tyler, Texas to order the Honorable Edwin Klein, presiding judge of the 420th District Court of Nacogdoches County, Texas, to hold a hearing requested by Relator regarding his Motion to Withdraw Waiver of Jury Trial. That petition was refused in Cause Number 12-16-00270-CR. In accordance with case law, it is appropriate for the Court of Criminal Appeals to allow an appeal of such refusal when the court of appeals erroneously denies a writ of mandamus. *See, e.g.*, *Joachim v. Chambers*, 815 S.W.2d 234, 240-41 (Tex.1991) (CA erroneously denied mandamus to prohibit retired judge, who continued to sit as judicial officer, from testifying as expert in trial); *see also Rios v. Calhoon*, 889 S.W.2d 257, 259 (Tex.1994) (CA erroneously denied mandamus to require trial court to order preparation of record for indigent appellant). When a court of appeals erroneously refuses to issue a writ of mandamus,

1

a petition for mandamus filed in the Supreme Court should be directed at the trial court's action, not the court of appeals' refusal to issue the writ. For clarity, relator is referred to as Jeremie Tennison; respondent, the Honorable Edwin Klein, is referred to by name; and the real party in interest is referred to as Jeremie Tennison.

## STATEMENT OF JURISDICTION

This Court has jurisdiction to issue a writ of mandamus. Tex. Gov't Code § 22.221(a) (West); see Tex. Const. art V, §§ 3, 6(a).

## STATEMENT OF THE CASE

The underlying suit seeks to have the Relator, Jeremie Glen Tennison tried on the criminal charge of evading arrest from a law enforcement officer in violation of Tex. Penal Code Ann. § 38.04(a) (West 2013).

The Respondent is the Honorable Edwin Klein, presiding judge of the 420th Judicial District Court of Nacogdoches County, Texas.

The order complained of by Relator is the Trial Court's refusal to hold a Hearing for acceptance of a Waiver of Jury Trial in Cause Number F1421200 until the day of the scheduled Bench Trial. The Realtor complains such failure to rule in the matter proscribed by Tex. Code Crim. Proc. Ann. § 28.01, among others, is necessarily intended to prevent Relator from withdrawing his Waiver of Jury Trial by setting forth a sequence of events for which the Court would be allowed to

2

engineer failure of such Motion and purposefully deprive the Relator of a constitutional right.

On September 26, 2016, Relator filed a Petition for Writ of Mandamus with the Twelfth Court of Appeals sitting in Tyler, Texas. Contemporaneously, Relator filed an opposed Motion for an Emergency Stay of the bench trial scheduled for September 28, 2016. (Exhibit O), (Exhibit P) The Twelfth Court of Appeals refused to issue the requested writ and additionally refused the emergency stay. (Exhibit Q) Given the unalterable effect of a Bench Trial forced upon an unwilling defendant who has repeatedly asked the court to allow a withdrawal of the waiver in compliance with this Court's decision in *Hobbs v. State*, 298 S.W.3d 193 (Tex. Crim. App. 2009) and *Marquez v. State*, 921 S.W.2d 217, 220 (Tex. Crim. App. 1996), the Relator files this original petition.

**ISSUES PRESENTED**

I. THE TRIAL COURT'S FAILURE TO AFFORD RELATOR A FAIR AND IMPARTIAL HEARING HAS CONSTITUTIONALLY DEPRIVED HIM OF A RIGHT PROTECTED BY THE CONSTITUTIONS OF BOTH THE UNITED STATES AND THE STATE OF TEXAS

II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO HOLD HEARING ON MOTION TO WITHDRAW WAIVER OF JURY TRIAL

III. THE RELATOR'S EARLIER WAIVER WAS THE RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL

IV. MANDAMUS IS THE APPROPRIATE REMEDY IN THIS CASE

## STATEMENT OF THE FACTS

At approximately 1:55 p.m. on August 13, 2014, Relator Jeremie Tennison and his mother were in route to the funeral of his grandfather on Farm to Market Road 343 in Nacogdoches County, Texas. Approximately three miles from the site of the funeral, Mr. Tennison passed Trooper Larry Linder of the Texas Highway Patrol. Trooper Linder's radar unit registered Mr. Tennison was traveling at 77 miles per hour in a 55 mile per hour speed zone. Upon activating the emergency lights, Trooper Linder's in-vehicle video unit began recording the entire incident although the audio was either of immensely poor quality or was purposefully turned off. Trooper Linder pursued Mr. Tennison and initiated the stop without incident.

Upon contact with Mr. Tennison, Trooper Linder inquired as to the purpose of the Relator's speed. Mr. Tennison related that they were attempting to get to his grandfather's funeral prior to its start. Trooper Linder then began to question Mr. Tennison's mother. He stated, "I saw you with that other boy the other day. What were you doing with him?" Trooper Linder's questioning indicated he was questioning her about her previously being in the company of a black man. Linder then asked, "What are you doing with him?" indicating the Relator. Mrs. Tennison replied, "That's my son."

Trooper Linder made the assessment that Mr. Tennison was intoxicated. He then moved Mr. Tennison to a location out of range of his vehicle video for the

5

purpose of performing sobriety tests upon him. Contemporaneous with this action, Mr. Tennison's father arrived on the location. After the sobriety tests had been performed, Trooper Linder approached the senior Mr. Tennison and engaged him in conversation. During this, the Relator returned to his seat in the still running pickup truck to take advantage of air conditioning in the hot August heat.

Upon recognizing the Relator was behind the wheel, Trooper Linder approached the truck and grabbed Mr. Tennison by the hair, violently yanking on his head several times, arguably fracturing two of the Relator's cervical vertebrae. To avoid the assault, the Relator put the vehicle in drive and sped away while leaving a thick cloud of dust. Trooper Linder immediately pulled his service weapon and fired several times at the vehicle. Trooper Linder then approached the senior Mr. Tennison in anger and assaulted him with his fist.

Trooper Linder then reported to dispatchers that Mr. Tennison had attempted to run him over, necessitating the use of his service weapon. Trooper Linder was shortly notified that Mr. Tennison and his mother had crashed into a tree on County Road 874 in Nacogdoches County, Texas. By the time Trooper Linder arrived on the scene, the vehicle was engulfed in fire. Trooper Linder used his fire extinguisher to momentarily suppress the fire so that an extraction could be made. The Relator was left untreated in any significant circumstance until EMS arrived.

6

An ambulance was dispatched from Nacogdoches EMS at 2:10 p.m. and arrived at approximately 2:30 p.m. After attempting to address Mr. Tennison's wounds, EMS left in transport at approximately 3:00 p.m., arriving at the Nacogdoches Memorial Hospital at 3:25 p.m. During transport, Mr. Tennison was given morphine to alleviate the pain. While in treatment at the Nacogdoches Memorial Hospital, Trooper John Riggins informed Mr. Tennison he was under arrest for Driving While Intoxicated and requested a blood sample. Mr. Tennison complied without warrant and a sample was drawn by the hospital's phlebotomist. The sample was mailed to the DPS Laboratory in Tyler, Texas. Subsequent testing indicated that Mr. Tennison's blood alcohol content was 0.054 with 99.7% confidence. An additional drug screen indicated the presence of Lorazepam and morphine administered by medical personnel. After an initial evaluation, Mr. Tennison was transported to LSU Medical Center in Shreveport. After a period of some months attempting to rehabilitate the leg, it was amputated by surgical staff.

On September 19, 2014, Mr. Tennison was indicted for the crime of evading arrest. (Exhibit A) On April 2, 2015, the 420th Judicial District Court of Nacogdoches County appointed John Henry Tatum II as Mr. Tennison's counsel. (Exhibit B) On March 7, 2016, Mr. Tennison waived his right to a Jury Trial with the advice of counsel. (Exhibit C) Mr. Tennison was then set for a plea on May 12, 2016. (Exhibit D) He ultimately chose not to accept the plea and dismissed John Henry Tatum, II

and retained the services of Winfred Aaron Simmons, II, a local attorney. The District Clerk's Record is silent on this transaction as it appears no record of the dismissal or removal of Mr. Tatum was filed with the clerk and no appearance was filed by Mr. Simmons. Based on his earlier waiver of a jury trial, the Relator was set for a bench trial on August 3, 2016. (Exhibit E) Mr. Tennison, believing his counsel at that time was unprepared for such a trial, sought to plea to the matter on that date.

Previous to this plea date, the Tennison family retained the services of present counsel to defend Mr. Tennison. Particular in their stated desire was to ensure the trial would "flesh out" facts the Relator believed would not have been presented by previous counsel and his stated desire that this trial be conducted before an impartial jury of his peers. On August 2, 2013, Counsel filed a Motion For Substitution of Counsel (Exhibit F) which was granted by the court (Exhibit G). Contemporaneous to that motion, counsel also filed a Motion For Continuance (Exhibit H) which was granted, setting the Defendant for a Bench Trial on September 28, 2016. (Exhibit I) On August 23, 2016, Defendant filed a Motion to Withdraw Waiver of Jury Trial. (Exhibit J) On the same day, August 23, 2016, the Defendant filed a Motion for a Pretrial Hearing. (Exhibit K) During a subsequent verbal communication with Pamela Sowell, the 420th District Court Coordinator, Defendant's Counsel was told Judge Klein would take the matter up on the day of the Bench Trial.

8

I.  THE TRIAL COURT'S FAILURE TO AFFORD RELATOR A FAIR AND IMPARTIAL HEARING HAS CONSTITUTIONALLY DEPRIVED HIM OF A RIGHT PROTECTED BY THE CONSTITUTIONS OF BOTH THE UNITED STATES AND THE STATE OF TEXAS

Tex. Code Crim. Proc. § 28.01 provides:

Sec. 1. The court may set any criminal case for a pre-trial hearing before it is set for trial upon its merits, and direct the defendant and his attorney, if any of record, and the State's attorney, to appear before the court at the time and place stated in the court's order for a conference and hearing. The defendant must be present at the arraignment, and his presence is required during any pre-trial proceeding. The pre-trial hearing shall be to determine any of the following matters:

(b) Pleadings of the defendant.

Sec 2. When a criminal case is set for such a pre-trial hearing, any such preliminary matters not raised or filed seven days before the hearing will not thereafter be allowed to be raised or filed, except by permission of the court for good cause shown; provided that the defendant shall have sufficient notice of such hearing to allow him not less than 10 days in which to raise or file such preliminary matters. The record made at such pre-trial hearing, the rulings of the court, and the exceptions and objections thereto shall become a part of the trial record of the case upon its merits.

Thus, the statute holds that the court *may* hold pre-trial hearings on matters, but not that it must do so. See *Ford v. State*, 305 S.W.3d 530 (Tex. Crim. App. 2009). There are, however, circumstances in which a court must conduct a hearing and the conduct of such hearing is not left to the court's leisure. Tex. Code Crim. Proc. 11.15,

for instance, provides: The writ of habeas corpus *shall be granted without delay* by the judge or court receiving the petition, unless it be manifest from the petition itself, or of some documents annexed to it, that the party is entitled to no relief whatever.

Given the discord between these two commands within the same code, it is helpful to examine the source from which each derives sustenance. Section 28.01 finds its roots in the necessity of a trial court to manage its docket and to move matters court administration forward. As such, the court may choose the timing of the hearing of pre-trial motions when they do not injure substantial constitutional rights or do not so prejudice the matter against the State or the Defendant. The stripping of a court of the management of its own docket would make the attainment of an efficient administration of the court, and of justice itself, improbable.

But there are matters of such great dimension that criminal justice demands the court conduct a hearing prior to the final action of litigation. This holds when matters considering constitutional demands are requested of the court. Tex. Code Crim. Proc. 11.15 regarding matters of *habeas corpus*, for instance, is but one of several meant to protect constitutional values which may tend to be invaded when the court sleeps. Chapter 31 of the Tex. Code Crim. Proc. similarly addresses change of venue matters in which the consideration by hearing must reasonably be held at a period prior to trial. Likewise, Chapter 30 of the Tex. Code Crim. Proc. addresses matters of the disqualification of trial judges. It is categorically inarguable that

hearings on matters such as these should be considered to be required held at a reasonable time prior to the commencement of trial, and to do otherwise, imperils the fairness and impartiality of the process.

A Motion To Withdraw Waiver Of Jury Trial must necessarily be of such great constitutional import that it receives at least as much attention by the trial court as did the initial waiver. Certainly, the waiver of such right has been considered to be of great enough importance that the trial court held a pre-trial hearing on the matter. It follows that a motion to withdraw deserves at least comparable consideration.

The right to trial by jury is protected by both the United States and Texas Constitutions. The United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence. U.S. CONST. amend. VI.

The Texas Constitution provides:

> The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency. Provided, that the Legislature may provide for the temporary commitment, for observation and/or treatment, of mentally ill persons not charged with a criminal offense, for a period of time not to exceed ninety (90) days, by order

11

of the County Court without the necessity of a trial by jury. TEX. CONST. art. I, § 15.

Additionally, Tex. Code Crim. Proc. Ann. Art. 1.12 (Vernon 2015) directs "[t]he right of a trial by jury shall remain inviolate.

The waiver of a jury trial is prescribed in article 1.13 of the Texas Code of Criminal Procedure but the withdrawal of such waiver was not. Therefore, the matter must be addressed by case law and it is in *Marquez v. State*, 921 S.W.2d 217, 220 (Tex. Crim. App. 1996) that the appropriate standards for such withdrawal have been considered. *Marquez* held that Texas follows the prevailing trend allowing a defendant to withdraw his waiver where the request is made in good faith and there are no adverse consequences. Authorities holding to this view hold that a defendant should be permitted to withdraw his jury waiver unless granting the request would prejudice the state, delay the trial, impede justice, or inconvenience the witnesses, or, in some cases, the defendant's request was made in bad faith. *Id*. at 221-22. This right is described as fundamental, "cherished," and one in which "*the court should only deny the privilege thus accorded a defendant* charged with a crime to a trial of his peers *where some adverse consequence will flow* from his change of mind." Id. (quoting *People v. Melton*, 271 P.2d 962, 964 (Cal. App. Dep't Super. Ct. 1954)).

When a defendant seeks to withdraw a waiver of his right to a jury trial, the defendant is initially burdened with establishing on the record that the request

12

to make the withdrawal has been made sufficiently in advance of trial and that granting of such request will not (1) interfere with the orderly administration of the business of the court, (2) result in unnecessary delay or inconvenience to the witnesses, or (3) prejudice to the State. See *Hobbs v. State*, 298 S.W.3d 193 (Tex. Crim. App. 2009). Where the defendant's claims are rebutted by the State, the trial court, or by the record itself, the trial court does not abuse its discretion in refusing to grant the withdrawal. Here, the Relator has stated that he has made the motion to withdraw the waiver of jury trial thirty-six (36) days prior to the bench trial. Contemporaneous with this motion, the Relator also motioned the court for a pre-trial hearing on the matter well in advance of trial. That hearing was effectively refused by the trial judge. The Relator also stated in the motion that he anticipated no adverse consequences to the State and that it was his intention to bring such issue prior to trial such that no witnesses would be inconvenienced and further not to interfere adversely with the administration of the business of the court. The record contains nothing that rebuts these statements and the record remains abundantly silent as to any response. There is nothing which suggests allowing the Relator to withdraw his jury waiver would have any adverse consequences on the State, witnesses, or the court.

13

It would therefore seem that the right to a pre-trial hearing in advance of the trial may indeed be weighed by the constitutional dimensions of the right asserted. The right to a jury trial is such a right.

> At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without "due process of law," Amdt. 14, and the guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial , by an impartial jury." Amdt. 6. Taken together, these rights indisputably entitle a criminal defendant to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (citing *United States v. Gaudin*, 515 U.S. 506, 510 (1995); see also *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993); *In re Winship*, 397 U.S. 658 (1970)).

Although each of the aforementioned cases considered matters in addition to the right to a jury trial, it is inarguable that the tenor of those Supreme Court decisions was the certainty of a right to a trial by an impartial jury of a citizen's peers. A failure to hold requested hearing on matters which are of paramount constitutional dimension necessarily indicates an abuse of discretion by the trial court.

II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO HOLD HEARING ON MOTION TO WITHDRAW WAIVER OF JURY TRIAL

Texas appellate courts will not disturb such matters unless they find an abuse of discretion. Trial courts abuse their discretion when they act without reference to guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim.

14

App. 1990) (citing *Downer v. Aquamarine Operators, Inc.* 701 S.W.2d 238, 241-42 (Tex. 1985)). Stated differently, a trial court abuses its discretion if it acts arbitrarily or unreasonably. *Trimble v. PR Reg. Ser.*, 981 S.W.2d 211, 214-15 (Tex. App. — Houston [14th Dist.] 1998). To determine whether the trial court abused its discretion, we consider the record as a whole. *Penry v. State.* 903 S.W.2d 715, 728 (Tex. Crim. App. 1995).

In this matter, the record is clear. Within twenty-one (21) days after filing his Motion for Substitution of Counsel (Exhibit F) entering the case and thirty-six (36) days prior to the scheduled Bench Trial, Defendant's Counsel filed a Motion to Withdraw Waiver of a Jury Trial (Exhibit J) and a Motion For Pre-trial Hearing on the matter. (Exhibit K) By its refusal, the court has made it abundantly clear that it considered the matter unworthy of consideration. This is the only inference which may be reasonably drawn from the court's refusal to hear the issue prior to the scheduled bench trial. The hearing of such a matter within moments of the bench trial is improper because it is calculated to create an excuse for the court to validly deny such request prior to the beginning of the bench trial. For instance, the Relator has unequivocally sought this hearing for the purpose of avoiding any interruption of the court's administration. Additionally, the Relator sought no inconvenience upon the witnesses and sought no prejudice on the State. (Exhibit J) The denial of a hearing well in advance of trial and without any response at all from the State, leaves

15

the record vacant of any assertion of interruption of the court's administration, any inconvenience upon witnesses, and any prejudice that may be experienced by the State.

The conduct of such a pre-trial hearing moments before the bench trial is necessarily prejudiced against the Relator since the court has engineered the factors for which it may validly deny the Realtor's request to withdraw his waiver of a jury trial. For instance, in order to establish the court's claim that it's orderly administration may be affected, it need only point out that the State has issued a Witness List of forty-one (41) persons it intends to call at the bench trial and who may be waiting in the courthouse hallway. (Exhibit L) This would not only interrupt the court's efficient administration but create an inconvenience to the witnesses. It is inconceivable that the Relator has sought such inconvenience and he has pled so by requesting the hearing thirty-six (36) days prior to the bench trial. Any such interruption or inconvenience is most certainly judicially created and it might reasonably appear the timing has been calculated to deny the Relator a fair hearing.

If a trial court engineers the factors upon which a hearing is calculated such that it reasonably assures the denial of the Relator's rights, it has acted arbitrarily and unreasonably. If these matters do not create a recipe for textbook bias and behavior that is unreasonable and arbitrary, there might likely be no violation so grievous that any party might claim as an abuse of discretion.

16

## III. THE RELATOR'S EARLIER WAIVER WAS THE RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL

The waiver of the right to a jury trial must be one in which the defendant is legally aware of the consequences of the matter. An allocution before the trial court is an integral construct in such waiver and establishes a record for the court, but it is also abundantly necessary the defendant perform such waiver with as a reasonably complete understanding as to the facts against him. In other words, it is reasonable for a criminal defendant to rely on counsel that he should do so.

The waiver of a trial by jury is a constitutional matter and not one of trial strategy. The effect of such a waiver is greatly enhanced by the very damage to the constitutional rights of the defendant. The defendant is left to the vagaries of the State.

> Judges, it is sometimes necessary to remind ourselves, are part of the State — and an increasingly bureaucratic part of it, at that.) The founders of the American Republic were not prepared to leave it to the State, which is why the jury-trial guarantee was one of the least controversial provisions of the Bill of Rights. It has never been efficient; but it has always been free. *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (Scalia, J. concurring).

When advising a client on the waiver of constitutional rights, it is the duty of defense counsel to be as well-informed as possible prior to advising that waiver. This is, of course, a thorny path since, in many circumstances, the desires of the defendant

17

and the evidence proffered by the State appear incontrovertible. But even in the contractual plea bargain, a defendant does not waive the right to a jury trial until he allocates immediately prior to sentencing.

> Having accepted employment, whether by appointment or by the private retention of services, the lawyer should act with competence, commitment, and dedication to the interest of the client and with zeal in advocacy upon the client's behalf. A lawyer should feel a moral or professional obligation to pursue a matter on behalf of a client with reasonable diligence and promptness despite opposition, obstruction, or personal inconvenience to the lawyer. Tex. Disciplinary Rules Prof'l Conduct R. 1.01, cmt 6. (1989) reprinted in Tex. Gov't Code Ann. Tit. 2, subtit. G, app. A (West 2015) (Tex. State Bar R. art. X, § 9).

The Rules of Professional Conduct require the lawyer to a greater commitment than the "man on the street." This is because the lawyer holds the trust and future of his clients in his actions and as such, a special duty has arisen in response to that relationship. Nothing could be more important than the liberty of a criminal defendant because the State may take away everything he has…and everything he is ever going to have. Therefore, it is of paramount importance that the criminal defense lawyer makes a reasonable effort to investigate the circumstances of the client's case.

It is unthinkable that in a criminal matter involving potentially forty-one (41) witnesses, both of Relator's previous counsel found nothing of which to discover other than what the State had provided. In a criminal matter where a Texas State Trooper fired his weapon at a fleeing party, there was no report proffered as to the

Texas Department of Public Safety's internal investigation of the shooting nor was one subpoenaed by defense counsel. When available video recording indicates there were many civilians witnessing the actions of law enforcement, no interviews were performed by defense counsel. In an action in which a defendant's leg was broken and in which he suffered the final amputation of that leg and one in which he arguably may have suffered two fractured cervical vertebrae caused by an assault upon him by the Texas State Trooper, no investigation whatever appeared to be performed. Such investigation is abundantly available through subpoena power…yet no subpoena whatever was issued at the request of defense counsel in the three-hundred forty (340) days from his appointment until the day such waiver of the right to a jury trial was signed and there were none at all until present counsel entered. The Clerk's Record has no Motion to Substitute Counsel for the second counsel nor any motion to withdraw by the appointed counsel. The Clerk's record is silent on each of these matters. Can any rational being reasonably assert such a party could knowingly advise his client to waive his right to a jury trial in a complicated criminal matter when so little, if any, investigation has been performed? To do so is patently absurd.

IV.    MANDAMUS IS THE APPROPRIATE REMEDY IN THIS CASE

The Supreme Court of Texas and intermediate appellate courts first derive jurisdiction to issue mandamus relief from constitutional provisions. See TEX.

CONST. art V, § 3 (giving mandamus authority to the Supreme Court of Texas); *Id.* § 6 (authorizing the courts of appeals to exercise mandamus power). The Texas Government Code also allows a court of appeals to "issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court" against a district or county court judge in the court of appeals district or a district court judge "who is acting as a magistrate at a court of inquiry under [c]hapter 52, [of the] Code of Criminal Procedure, in the court of appeals district. Tex. Gov't Code Ann. §§ 22.221 (a), (b) (West 2014). The Texas Rules of Appellate Procedure mandate that a relator must first seek relief in a court of appeals. Tex. R. App. P. 52.3(e).

The relator must establish there is only one result that the trial court could have reached. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (citing *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)). Because reasonable minds differ, the fact that one court would have decided the case differently will not give rise to an abuse of discretion "unless it is shown to be arbitrary and unreasonable." Id. (citing *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding)). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Id.* ("[A] clear failure by the trial court to analyze or apply law correctly will constitute an abuse of discretion…"). Furthermore, the court abuses its discretion when the court misapplies the relevant law. *Id.*

In criminal proceedings, the relator must establish: (1) the act sought to be compelled is ministerial, and (2) there is no other adequate remedy at law. *In re State ex. Rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013) (orig. proceeding) (granting mandamus to compel trial court to submit jury instructions as requested, a ministerial act it previously refused to perform); *State ex. rel. Young v. Sixth Judicial District Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (issuing mandamus for a ruling on a motion); *Dickens v. Second Court of Appeals*, 727 S.W.2d 542, 548 (Tex. Crim. App. 1987) (orig. proceeding) (granting mandamus to correct the mandamus issued).

The ministerial duty requirement "is satisfied if the relator can show that he has a clear right to the relief sought — that is to say, when the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e. from extant statutory, constitutional, or case law sources), and clearly controlling legal principles. See *Young*, 236 S.W.3d at 210 (granting mandamus in regard to a jury charge).

The general rule is that mandamus relief will not issue to correct a mere incidental trial court ruling when the relator has an adequate remedy at law. When considering balancing tests to determine whether a party has an adequate remedy by appeal, courts look to a number of factors, including whether mandamus will: (1) preserve a relator's "substantive and procedural rights form impairment or loss[;]" (2) "allow

the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments[;]" and (3) prevent waste of public and private resources invested in proceedings that would eventually be reversed. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004) (orig. proceeding).

Here, the ministerial requirement has been satisfied by rulings from the Court of Criminal Appeals in *Marquez*. See also *Green v. State*, No. 14-99-00642-CR (Tex. App. — Houston [14th Dist.] Jan. 4, 2001) (memorandum opinion per curiam). The facts of this case certainly indicate the requirements required by case law rulings have been met. The Relator has appropriately pled and the record is devoid of any matter upon which disagreement as to unfairness to the court administration, the witnesses, or State have been alleged.

The Relator has no adequate remedy at law. The assertion of this right is no mere incidental trial court ruling but rather one of bedrock constitutionality with underpinnings from case law. The violation of case law in regards to what is a paramount constitutional right has little, if any, remedy because such remedy would be speculative at best.

Lastly, the Relator has made the predicate request required and it has *in effect* been refused. When the request to the trial court would be futile, parties are excused from this requirement because the refusal would be a mere formality. *Terrazas v.*

*Ramirez*, 829 S.W.2d 712, 725 (Tex. 1992) (recognizing that the court has previously allowed parties to seek mandamus relief when they did not first present a request to the trial court because the demand would otherwise be futile (citing *Stoner v. Massey*, 586 S.W.2d 843 (Tex. 1979) (orig. proceeding). Here, the predicate request *was* made even though futile.

## CONCLUSION

Nothing in the record from the date of the indictment until September 25, 2016, indicates the Relator should be deprived of the trial court's granting of his Motion to Withdraw Waiver of Jury Trial. Certainly, nothing in the record establishes he has sought to withdraw the waiver in bad faith. Indeed, the Relator has met all the requirements established by *Marquez* and as such, he should be allowed the opportunity to present a defense before a jury. It is concerning in itself, that the trial court has sought to prevent the matter from a proper hearing for some reasonable period before the trial and is likely indicative of the heightened need for such an extraordinary procedure as this petition. Indeed, the very refusal of even a fair hearing indicates the trial court's bias against the Relator. This rather arbitrary and unreasonable behavior is, in itself, evidence of an abuse of discretion. Additionally, it should be reasonably clear that no appropriate investigation was performed. Investigations, of course, are not necessarily indicated by the Clerk's Record but the very lack of even a single subpoena requested by defense counsel in

23

a complicated criminal case, may indeed be indicative of a willingness on the part of defense counsel to investigate no further than the evidence proffered by the State. Such a defense in a complicated case is rotten from its very inception. Without reasonable investigation, it cannot be said that the Relator's waiver of a jury trial was well-advised.

This case is ripe for mandamus in that the interests invaded may likely not be cured by any other action and even if so, that remedy is speculative at best.

## PRAYER

WHEREFORE, Relator prays this Court grant this writ of mandamus and specifically instruct the trial judge to allow the withdrawal of the waiver of a jury trial and set the case for a trial to be judged by a jury.

Relator prays for all other relief to which he should show himself to be otherwise justly entitled.

## CERTIFICATION

I certify that I have reviewed the petition and have concluded that every factual statement made in the petition is supported by competent evidence include in the appendix or the record.

*/s/ Clay Dean Thomas*
Clay Dean Thomas

**CERTIFICATE OF APPELLATE COUNSEL**

I hereby certify that the foregoing document was electronically filed to the Clerk, Court of Criminal Appeals on this the 26th day of September, 2016.

*/s/ Clay Dean Thomas*
Clay Dean Thomas

**CERTIFICATE OF COMPLIANCE**

This is to certify that the sections covered by Texas Rule of Appellate Procedure 9.4(i)(1) contain 6,738 words in 14-point type, excepting footnotes which are in 12-point type. The total word count is 6,738.

*/s/Clay Dean Thomas*
Clay Dean Thomas

Respectfully submitted,

BY: */s/ Clay Dean Thomas*
Clay Dean Thomas
Attorney for Relator
3548 NE Stallings Drive
Nacogdoches, Texas 75965
Phone:      (936) 715–7144
Facsimile: (877) 899–0382
clay.thomas@claythomaspc.com
State Bar Number: 24088520

25

**CERTIFICATE OF SERVICE**

I certify that on September 27, 2016, I served a copy of Relator's Petition on the party listed below by electronic service made to the trial court's coordinator, and the electronic transmission was reported as complete. My e-mail address is clay.thomas@claythomaspc.com.

/s/Clay Dean Thomas
Clay Dean Thomas

The Honorable Edwin Klein
420th Judicial District Court
101 West Main Street
Suite 210
Nacogdoches, Texas 75961
TEL: 936-560-7848
FAX: 936-560-7899

**CERTIFICATE OF SERVICE**

I certify that on September 27, 2016, I served a copy of Relator's petition on the party listed below by depositing a true copy of the above and foregoing document with the United States Postal Service.

/s/Clay Dean Thomas
Clay Dean Thomas

Jeremie Glen Tennison
2306 Douglass Road

Nacogdoches, Texas 75964